UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| JADCO ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 12-225-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JAMES D. FANNON, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendants James Fannon, Benjamin Fannon, C&F Contractors, LLC ("C&F"), J and H Enterprises of Virginia, LLC ("J&H"), and Fannon Brothers Tire, Inc.'s ("FBT") Motion for Summary Judgment. [Record No. 53] The Defendants contend that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. For the reasons discussed below, the Defendants' motion will be granted, in part, and denied, in part.

**I.**

Plaintiff Jadco Enterprises Inc., ("Jadco") is a Kentucky corporation whose business includes the mining and selling of coal. [Record No. 34, p. 2] Defendant C&F is a limited liability corporation in the business of hauling coal. James and Benjamin Fannon are its sole members and managers. [Record No. 53-2, p. 2] Additionally, James and Benjamin Fannon are the sole members of Defendant J&H, which is a coal transportation subcontractor. [*Id.*]

While both James and Benjamin Fannon are members and manage the day-to-day affairs of C&F and J&H, James Fannon handles the majority of management responsibilities for the companies. [Record No. 54-22, pp. 41, 59] C&F does not own any trucks. Instead, it transports coal through subcontractors such as J&H. [Record No. 53-2, p. 2] At times relevant to this action, C&F would also contract with other trucking companies when J&H was not able to meet C&F's shipping demands. [*Id.*] Defendant FBT, a Virginia corporation, is in the business of selling tires. And at times relevant to this action, it sold tires to J&H for use in hauling coal. [*Id.*, p. 3] FBT is also wholly owned by David M. Fannon, the father of James and Benjamin Fannon. [*Id.*] Century Coal, LLC is also in the business of mining and selling coal. Its affiliate companies include Suburban Coal operations and Yukon Coal Company. [Record No. 54, p. 6] Collectively, they are referred to as "Century Coal."

This case arises out of a transfer of coal between Jadco and the Defendants. Jadco alleges that C&F and James Fannon intentionally defrauded Jadco by issuing a purchase order for 2,500 tons of coal with no intent to pay. It claims that James Fannon intended to pay other creditors with the proceeds from the sale of the coal and that James Fannon, Benjamin Fannon, and J&H made preferential transfers from the proceeds of that sale. [Record No. 34, pp. 8-9] It claims that FBT, J&H, James and Benjamin Fannon all made fraudulent conveyances. It further alleges that James Fannon committed fraud and that the corporate veil of C&F and J&H should be pierced so that James and Benjamin Fannon may be held personally liable for their fraudulent conduct. [*Id.*, pp. 9-10]

Jadco alleges that this dispute started with a breach of a coal hauling arrangement between C&F and Century Coal. At the beginning of 2009, Century Coal began experiencing severe financial difficulties such that James Fannon and C&F made multiple attempts to obtain payment for hauling services provided by C&F to Century Coal. [Record No. 54-2, p. 87; Record No. 54-3, pp. 55-80] When it appeared that they would not obtain payment, James Fannon filed suit against Century Coal in Bell Circuit Court on May 28, 2009. *See C&F Contractors, LLC v. Century Coal, Inc.*, No. 09-00230 (Ky. Cir. 2009). C&F was also undergoing financial difficulties. For example, from April 2009 to May 2009, it experienced a near fifty percent drop in deposits. [Record No. 54-9] At this point, Century Coal still owed $122,831.91 to C&F for coal hauling services. [*Id.*] During this same period, C&F owed J&H compensation for trucking services and J&H owed FBT for tires sold J&H. [Record No. 54-10]

Around this same time, James Fannon believed that Century Coal was having financial troubles and was on the verge of shutting down. [Record No. 54-2, p. 87; Record No. 54-3, pp. 78-79] James Fannon attempted to issue a purchase order on June 10, 2009, to Century Coal for 2,500 tons of coal at the price of $60.00 a ton. [Record No. 54-12] When asked if he intended to pay Century Coal for the June 10, 2009 order, Fannon claimed that he would pay Century Coal if business went on as usual and Century Coal paid C&F. [Record No. 54-3, pp. 214-223] Larry Heatherman, an employee of Century Coal, declined the purchase and advised James Fannon that Jadco was mining on the property so he could issue the purchase order to that entity. [Record No. 54-13, pp. 1-2] On June 11, 2009, James

Fannon issued the purchase order in question to Jadco for 2,500 tons of coal for a purchase price of $60.00 per ton. . [Record No. 54-15; Record No. 34, p. 3]

After the purchase order was issued, Jadco delivered 2,214.19 tons of coal to C&F. [Record No. 54-15] C&F paid Jadco's first invoice for $7,989.00, but did not pay the remainder of the purchase price. [Record No. 53-2, p. 2] C&F then sold the coal for an aggregate price of $138,536.13. [*Id.*] On June 30, 2009, C&F issued several checks to J&H equaling $160,800 and two checks to James and Benjamin Fannon each for $3,875. The Defendants claim that was payment of valid, pre-existing debt to J&H which totaled $176,515.55. [Record No. 53-2, p. 4] As James Fannon stated, "I pay my bills, the oldest bills first. Check C&F Contractors, that's how they paid their bills." [Record No. 54-2, p. 62]

The Defendants also claim that the payments made to Benjamin and James Fannon were compensation in the ordinary course of business that were made each quarter to both of the brothers. [*Id.*] From June 15, 2009, to February 22, 2010, J&H also issued several checks to FBT. [Record No. 34, pp. 5-6] The Defendants claim that these checks were payment of valid, pre-existing debt for tires and other services provided by FBT.

Jadco filed suit in the Clay Circuit Court against C&F and James Fannon on July 31, 2009, seeking to recover $132,851.00 owed to it and alleging claims of fraud.[1] In their

---

1     On September 3, 2009, James Fannon was indicted by a Clay County Grand Jury for a failure to make a required disposition of property in violation of KRS § 514.070. More specifically, the indictment alleded that Fannon converted for his own use and benefit while owing and depriving the rightful owners, Kenny Smith and Jadco Enterprises, Inc., of the use and benefit of the coal or approximately $132,851.00. [Record No. 54-19]

response to Jadco's motion for summary judgment in the Clay Circuit Court, C&F and James Fannon argued that Jadco and Century Coal are the same entity, which entitles them to a set-off payment. [Record No. 54-20, pp. 4-5]

On December, 21 2009, the circuit court granted a partial summary judgment against C&F in the amount of $132,851.00 for payment of the coal, but denied Jadco's motion for summary judgment on the fraud claim. Jadco filed an Amended Complaint on October 22, 2012, joining J&H and Benjamin Fannon as defendants. The Amended Complaint reasserted the original claims against C&F and James Fannon, but also added preferential transfer and fraudulent conveyance claims against J&H, James, and Benjamin Fannon. [Record No. 1-1] J&H and Benjamin Fannon then removed the action to this Court based on diversity jurisdiction. On May 13, 2013, Jadco filed a Second Amended Complaint, adding FBT as a party and alleging fraudulent conveyances and preferential conveyance claims. [Record No. 34] This Court denied the motion to amend regarding the claims of preference against FBT because those claims are time-barred. [Record No. 33] The Defendants then filed the present motion for summary judgment. [Record No. 53]

## II.

Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v.*

*Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Instead, the nonmoving party must present "significant probative evidence" of a genuine dispute in order to defeat the motion for summary judgment. *Chao*, 285 F.3d at 424. The nonmoving party cannot rely upon the assertions in its pleadings; rather, it must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

### III.

The Defendants raise several issues in their motion for summary judgment. First, they assert that the preference claims against James Fannon, Benjamin Fannon, and J&H must be dismissed because they are time-barred. [Record No. 53-1, pp. 8-10] Second, they contend

that the fraudulent conveyance claims against J&H, James Fannon, Benjamin Fannon and FBT must be dismissed because those transfers represent payment of a valid, pre-existing debt. [*Id.*, pp. 10-12] Third, they argue that Jadco has failed to identify evidence in the record that supports a fraud claim against Fannon. [*Id.*, pp. 12-14] Fourth, they claim that Jadco has not presented evidence to support the allegation that the corporate entities should be disregarded. [*Id.*, pp. 14-16]

### A.    Preferential Transfer Claim

The Defendants contend that the preference claims made by Jadco must be dismissed because they are time-barred. [Record No. 53-1, p. 8] They state that J&H and Benjamin Fannon were first named parties on October 22, 2012. The last alleged preferential transfer was made on June 20, 2009. Thus, the Defendants contend that unless those claims relate back to July 30, 2009 (the date on which the original complaint was filed), they are time-barred. The Defendants also assert that the preference claim against James Fannon was first asserted on October 22, 2012; however, the transfers in question last occurred on June 20, 2009. The Defendants argue that, because the amendments do not relate back to the original complaint, the preference allegations against James Fannon, Benjamin Fannon, and J&H must be dismissed. [*Id.*, pp. 8-10] Jadco counters that the amendments relate back to their original claim. As a result, the preferential transfer claims should not be dismissed. [Record No. 54, pp. 25- 28]

The statute of limitation for a preferential transfer claim under Kentucky law states:

> (1) Any transfer declared by KRS 378.060 to inure to the benefit of creditors generally shall be subject to the control of courts of equity, upon the petition of any person interested filed within ninety (90) days after the mortgage or transfer is legally lodged for record or the delivery of the property transferred.

KRS § 378.070.  The Defendants are correct that the claims against J&H, Ben and James Fannon are well outside the ninety day period under KRS § 378.070.  This means that the preferential transfer claims against these Defendants are barred by the statute of limitations unless they relate back to the original filing.

### i.  Claims against J&H and Benjamin Fannon

An amendment to a complaint relates back if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading."  Fed. R. Civ. P. 15 (c) (1) (B).  "[P]recedent of this circuit clearly holds that 'an amendment that adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations.'" *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 318 (6th Cir. 2010) (quoting *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449 (6th Cir. 1991)).

Jadco claims that the relating back doctrine is controlled by the Supreme Court's decision in *Krupski v. Costa Crociere S. p. A.*, 130 S.Ct. 2485, 2493-96 (2010).  However, the Defendants argue that *Krupski* is not applicable under the facts presented.  The Court in *Krupski* held that the correct Rule 15 inquiry is "whether [the added Defendant] knew or should have known that it would have been named as defendant but for an error."  *Krupski*, 130 S.Ct. at 2493.  The Court stated that "repose would be a windfall for a prospective

defendant who understood, or who should have understood, that he escaped suit during the limitation period only because the plaintiff misunderstood a crucial fact about his identity." *Id.* Further, when a plaintiff knows the identities of two parties but mistakenly sues the wrong one, Rule 15(c) may allow relation back. *Id.* Jadco asserts that because J&H and Benjamin Fannon had actual or constructive knowledge that there was a lawsuit filed against C&F and James Fannon, its claims should relate back to the original filing. [Record No. 54, p. 26] It argues that because C&F and James Fannon were dilatory and sanctioned for refusing to produce discovery, its claims should relate back.

Since *Krupski*, the Sixth Circuit has declined to examine its line of cases holding that Rule 15(c) does not allow a relation back when the plaintiff attempts to add a new defendant. *See Beverly v. MEVA Formwork Systems, Inc.*, No. 2012 WL 4009711 at *4 (6th Cir, Sept. 12, 2012). And district courts have reached different conclusions regarding *Krupski*'s effect on Sixth Circuit precedent concerning the addition of new defendants. *Compare McKinney v. Laird*, No. 2011 WL 2457650, at *4 (W.D.Ky. June 16, 2011); *DeBois v. Pickoff*, 2011 No. WL 1233665, at *11 (S.D.Ohio Mar.28, 2011) *with Erie Indemnity Co. v. Keurig, Inc.*, No. 2011 WL 2893013, at *3 (N.D. Ohio July 15, 2011).

Here, Jadco's amendments to its complaint asserting claims against Benjamin Fannon and J&H do not relate back and are time-barred. *Krupski* does not apply to the amendments adding these Defendants, as the Court already decided regarding the claim against FBT in the Second Amended Complaint. [Record No. 33, p. 4] Specifically, Jadco fails to meet the requirement for a mistake about the party's proper identity because they did not mistakenly

name an incorrect party. [Record No. 54, p. 25] Jadco added those parties because it allegedly discovered the existence of the claims after the statute of limitations had expired. Rule 15(c) applies when the amendment "changes the party or the naming of the party against whom a claim is asserted." Fed. R. Civ. P. 15 (c)(1)(C). A mistake about the party's proper identity is required. *Id.* at (ii).

Here, Jadco is attempting to add defendants to the original claim. Specifically, it argues that there was no mistake concerning the identity of J&H and Benjamin Fannon. It did not try replace the original Defendants or re-name the original Defendant as occurred in *Krupski*. Rule 15(c) does not allow a relation back when a plaintiff learns more about a case through discovery then attempts to broaden liability to attach new parties in addition to ones already before the court. *See Hiler v. Extendicare Health Network*, No. 2013 WL 756352, at *4-5 (E.D. Ky. Feb. 26, 2013) (citing *Ham v. Marshall Conty*, No. 2012 WL. 5930148, at *6 (W.D.Ky. Nov. 27, 2012) ("[L]ongstanding Sixth Circuit precedent precludes Rule 15(c) from being used . . . where . . . [plaintiff] did not seek merely to correct a misidentification . . . but instead attempted to add . . . a defendant while maintaining his action against [the original defendant].")*; DeBois*, No. 2011 WL 1233665 at *12–13 (S.D. Ohio Mar. 28, 2011) (discussing *Krupski* as in line with the Sixth Circuit interpretation that "the *addition* of new defendants is not consistent with Rule 15(c)(1)(C)'s requirement of a change in parties") (emphasis in original); *Id.* at 13 ("[A] number of district courts have, while citing *Krupski*, reaffirmed the principle that adding parties is impermissible under the Sixth Circuit's interpretation of Rule 15 (C).").

In summary, the proposed amendment in this case does not arise from a mistake of identity and adds parties. While the holding in *Krupski* does not apply, the rule in *Asher* does. The addition of the new party is construed as a new cause of action. Therefore, even considering that discovery sanctions were imposed against C&F and James Fannon, the Court finds that the preferential transfer claims against J&H and Benjamin Fannon are time-barred under Rule 15.

### ii.    Claims against James Fannon

The preferential transfer claim against James Fannon was first asserted in October 22, 2012. James Fannon was a listed party in the original complaint so this claim will not be time-barred if it relates back to him. As noted above, the claim relates back if it "arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading." Fed. R. Civ. P. 15 (c) (1) (B). The Defendants' claim that the amendment adding the preferential transfer claim for James Fannon is not part of the same transaction or occurrence. Thus, they argue that because it does not relate back, the amendment adding the claim against James Fannon should be time-barred.

The Defendants are espousing a very narrow interpretation of the rule, contending that the original complaint regarded a fraud claim and non-payment while the preferential transfer claim occurred during a second transaction which occurred on June 30, 2009. [Record No. 52-1, p. 10] However, the Sixth Circuit has stated on numerous occasions that "the thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Miller v. Am. Heavy Lifting Shipping*, 231 F.3d 242, 248

(6th Cir. 2000) (citations and quotations omitted). More specifically, the Sixth Circuit has held that Rule 15(c) "is based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading." *Id.,* (quoting *Brown v. Shaner*, 172 F.3d 927, 932 (6th Cir. 1999)). This standard is defined "not by generic or ideal notions of what constitutes a 'conduct, transaction, or occurrence,' but instead by asking whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading." *U.S. ex rel. Bledsoe v. Comm. Health Sys., Inc.*, 501 F.3d 493, 516 (6th Cir. 2007) (citing *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir.2006)) ("The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one.").

Under the facts presented, the claim of preferential transfers relate back regarding James Fannon. The issue regarding these claims is whether James Fannon was "placed on notice that he could be called to answer for the allegations" in the Amended Complaint. *Bledsoe*, 501 F.3d at 516. The preferential transfer claim arises out of transfers of money made from the proceeds of coal sold to C&F by Jadco. The coal order was the original transaction that caused this action to be filed, and the preferential transfers are part of the

proof that Jadco is using to help prove fraud concerning James Fannon. Jadco's fraud claim is predicated upon the concept that the Defendants transferred the proceeds of the coal sale to themselves with no intent to pay Jadco. The Defendants issued a purchase order on June 11, 2009, and then made the alleged preferential transfers from that June to February of the next year. While not the same exact date, these claims do concern the same time period and alleged injury to the Plaintiff. The alleged fraud and the preferential transfers helped deprive Jadco of the payment for the coal sale. Taking the inferences in light most favorable to Jadco, it is reasonable to assume that James Fannon was "not surprised by the amplification of the allegations of the original complaint in the amended one." *Santamarina*, 466 F.3d at 573. The claims asserted in the original complaint and the preferential transfer claims are interwoven with one another regarding their time and injury to the Plaintiff. James Fannon should not be surprised that the allegations were broadened based on the original complaint. *Miller*, 231 F.3d at 250. The preferential transfer claim arises from the same body of operative facts as the claims asserted in the original complaint. Therefore, the preference claims concerning James Fannon relate back to the original complaint and are not time-barred by the statute of limitations.

**B.      Fraud by James Fannon**

The Defendants also assert that Jadco must provide clear and convincing evidence from which a jury could find that fraud had been committed. [Record No. 53-1, p. 13] *See Bishop v. Kirby*, 195 S.W.2d 84, 86 (Ky. 1946). Conversely, Jadco contends that the standard asserted by the Defendants is incorrect. It argues that it must only demonstrate that

there is a genuine issue of material fact to overcome summary judgment. [Record No. 54, pp. 3-6] However, in response, the Defendants claim that Jadco has "improperly lowered the bar for itself" and that it did "not even attempt to argue that the evidence to which it alludes meets the clear and convincing standard." [Record No. 55, p. 5]

The Defendants rely on *Anderson* in their argument for the evidentiary standard at this stage but they are incorrect in their interpretation of its holding and its application to Jadco's burden. While *Anderson* does state that the substantive evidentiary standard should apply to the summary judgment stage, it does not require the non-movants to present evidence to satisfy that standard at this stage. The question at this stage is "whether the evidence presented is such that a jury applying that [clear and convincing] standard could reasonably find for either the plaintiff or the defendant." *Anderson*, 477 U.S. at 255. Additionally, *Anderson* ruling stressed that its ruling does not denigrate the role of the jury and that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," whether the motion is for a summary judgment or a directed verdict. *Id*. Thus, the Plaintiff does not have to show clear and convincing evidence at this stage, only evidence that could support a reasonable factfinder in their determination of fraud by the clear and convincing standard. *See Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 275 (5th Cir. 1987). This requires the court to determine, as a matter of substantive law, whether the evidence can sustain a verdict for the Plaintiff.

In Kentucky, to prove fraud a plaintiff must show six elements by clear and convincing evidence: (i) a material representation; (ii) which is false; (iii) known to be false or made recklessly; (iv) made with inducement to be acted upon; (v) acted in reliance thereon; and (vi) causing injury. *PCR Contractors, Inc., v. Danial*, 354 S.W.3d 610, 613 (Ky. App. 2011) (citing *Bear, Inc., v. Smith*, 303 S.W.3d 137, 142 (Ky. App. 2010)).[2] The material misrepresentation must usually concern an existing or past fact, unless the defendant falsely represents his opinion of a future happening. "One may commit 'fraud in the inducement' by making representations as to his future intentions when in fact he knew at the time the representations were made he had no intention of carrying them out[.]" *PCR, Inc.*, 354 S.W.3d at 614 (citing *Major v. Christian Cnty Livestock Market*, 300 S.W.2d 246, 249 (Ky. 1957)). The issue argued by the parties in their motions whether James Fannon had the requisite intent to defraud Jadco at the time the transaction was made.

Additionally, fraud is usually proven circumstantially, so proof comes from inferences from the facts of the case. "[I]t is not necessary that direct evidence of fraud be adduced and that the fraud may be established by evidence which is wholly circumstantial . . . Further, even though each bit of circumstantial evidence in and of itself may seem trivial and unconvincing, the combination of all the circumstances considered together may be decisive

---

2       The Defendants claim that the Plaintiff must make a showing with clear and convincing evidence that James Fannon made a promise "with the cold blooded intention of not to perform it under any circumstances regardless of ability to do so" regarding the third element to prove fraud. [Record No. 55, p. 5] However, the requirement for fraud in Kentucky is a statement either known to be false or made recklessly. *UPS v. Rickert*, 996 S.W.2d 464, 468 (Ky.1999) The standard espoused by the Defendants is incorrect. Jadco only has to demonstrate recklessness in making the false representation of the material fact at issue.

in a given case of fraudulent design." *PCR*, 354 S.W.3d at 616 (citing *Johnson v. Cormney*, 596 S.W.2d 23, 27 (Ky. App. 1979)).

Defendants claim that Jadco has not presented evidence sufficient to survive summary judgment and that the evidence presented by the Plaintiff merely demonstrates that James Fannon had doubts it would collect from Century Coal and, therefore, had a reason to doubt that C&F would be able to pay Jadco for the transaction. [Record No. 55, p. 5] Defendants contend that the evidence offered by Jadco attempting to prove James Fannon's state of mind and intent is insufficient because it shows that he had the present intention to pay Jadco for his purchase order. [Record No. 53-1, p. 13] Jadco counters that James Fannon had the requisite intent to commit fraud because he believed he was entitled to a set-off, he knew he was going to pay himself, Benjamin Fannon, and his father first, and knew or should have known that Century Coal was never going to pay C&F. [Record No. 54, p. 20]

Jadco has met its burden of producing evidence sufficient to meet the clear and convincing standard at this stage in the proceedings. At this time, "whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1977). There is a genuine issue of material fact regarding Jadco's claim of fraud. At the time the purchase order was made, James Fannon believed Jadco and Century Coal to be the same entity, stating "JADCO Enterprises, Inc., were all one in the same conducting the same business and mining operations in the same mines" and that "JADCO Enterprises, LLC, is the alter ego of Century Coal, LLC." [Record No. 54-14, p. 2] Based on the parties' prior transactions

and legal action, a jury could conclude that James Fannon believed he was entitled to a set-off payment from Century Coal. Therefore, a reasonable factfinder could find that James Fannon could have believed that his entitlement to a set-off payment did not require him to pay Jadco at the time the purchase order was issued, thus demonstrating an intent to defraud.

Regarding his June 10, 2009, purchase order for 2,500 tons of coal at $60.00 per ton from Century Coal, James Fannon stated in his deposition that he intended to pay Century Coal for this order if business had gone on as usual and Century Coal had paid C&F for their previous transaction. [Record No. 54-3, pp. 214-223] James Fannon did not answer what would happen to the payment if Century Coal did not pay C&F for their previous transaction. This implies that James Fannon had the intention of keeping the coal and selling it to off-set the previous debt of Century Coal to C&F. Additionally, Jadco points out that James Fannon stated that he had doubts about Century Coal's solvency, ability to carry on production and continue business. [Record No. 54-2, p. 87; Record No. 54-3, pp. 78-79] He then made a similar order to Jadco while believing that Jadco was an alter-ego of Century Coal.

James Fannon also stated in his deposition on October 12, 2011, that he intended to pay his oldest bills first. [Record No. 54-2 p. 64] A reasonable jury could find that James Fannon had the intention to not pay Jadco for the purchase order, since it was not one of his oldest bills and C&F did not have enough money to pay all of its current obligations. This is dependent on whether James Fannon knew of the financial difficulty and impossibility of payment from Century Coal, which could be inferred from the lack of payment by Century Coal to C&F and his statements about Century Coal's financial hardships. If James Fannon

knew or should have known about Century Coal not being able to pay its debt to C&F then C&F would not be able to pay Jadco.

Jadco has presented an issue of material fact regarding the intent element of the fraud claim for James Fannon and Defendants have failed to demonstrate that no genuine issues of material fact exist. The Court must view all facts and evidence in light favorable to the non-moving party. *Matsushita*, 475 U.S. at 587. Again, considering that fraud is often proven through circumstantial evidence, a reasonable jury could find for Jadco applying the clear and convincing standard. Jadco has presented enough evidence to demonstrate a genuine issue of material fact regarding whether James Fannon made representations about his future intent when in fact he knew at the time the representations were made he had no intention of carrying them out or made those statements recklessly, thus, committing fraud. Therefore, the Defendants are not entitled to summary judgment for the fraud claims against James Fannon.

### C.    Piercing the Corporate Veil

The Defendants claim that Jadco has not provided enough evidence to present a question to the jury about whether the corporate status of C&F and J&H should be disregarded. [Record No. 53-1, p. 15] They contend that Jadco has made no allegation that James or Benjamin Fannon has dominated either C&F or J&H which would result in a loss corporate separateness. [*Id*.] They also assert that the lack of bookkeeping cannot be used as a factor when considering whether to disregard the corporations' separateness. Jadco counters that C&F and J&H cannot be used as instrumentalities of fraud. [Record No. 54,

p. 23] And they argue that, because of the use of the corporations to commit fraud and their alleged status as mere instrumentalities of James and Benjamin Fannon, their separate corporate status should be disregarded. [*Id.*, pp. 23-25]

Generally a corporation is treated as a separate and distinct legal entity from its shareholders. As a result, a court will rarely disturb the legal fiction of corporate separateness. *Schultz v. Gen. Elec. Healthcare Fin. Services Inc.*, 360 S.W.3d 171, 174 (Ky. 2012) (citing *Dare To Be Great, Inc. v. Commonwealth ex rel. Hancock*, 511 S.W.2d 224, 227 (Ky.1974); *Morgan v. O'Neil*, 652 S.W.2d 83, 85 (Ky. 1983)). If the corporate veil is pierced, the limited liability of the corporation is disregarded and the liabilities of the entity become enforceable against those who have exercised dominion over the entity to the point where there is no actual separateness. *Inter-tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152, 165 (Ky. 2012).

In Kentucky, there are traditionally two methods of piercing the corporate veil: the "alter ego" theory and the "instrumentality" theory. *Bear, Inc. v. Smith*, 303 S.W.3d 137, 147 (Ky. Ct. App. 2010). However, the Supreme Court of Kentucky recently held that the tests for either theory are "essentially interchangeable." *Inter-tel*, 360 S.W.3d at 165. The court explained that, to pierce the corporate veil under either theory, a party must prove "two dispositive elements: (1) domination of the corporation resulting in a loss of corporate separateness *and* (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." *Id.* (emphasis in original). In addressing the first element, Kentucky courts look to factors such as:

> (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders.

*Inter-tel Technologies*, 360 S.W.3d at 163-65 (citing *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dihmantec*, 529 F.3d 371, 379 (7th Cir. 2008)).

To satisfy the second element, the Plaintiff need not necessarily establish the elements of fraud, but it must show some injustice, more than a creditor's inability to collect from a corporate debtor. *Inter-tel*, 360 S.W.3d at 165 (citing *Sea-land Services, Inc. v. Pepper Source*, 941 F.2d 519, 522-23 (7th Cir. 1991)). Additionally, cases of fraud do not require veil-piercing because the creditor can sue those responsible in tort. *Inter-tel*, 360 S.W.3d at 164 (citing David Millon, *The Still–Elusive Quest to Make Sense of Veil–Piercing*, 89 TEX. L. REV. 15, 22 (2010)).

While it states that they can succeed under either theory, Jadco mainly argues the "instrumentality" theory. Under that theory, a plaintiff must prove "(1) the corporation was a mere instrumentality of the shareholder, (2) that the shareholder exercised control of the corporation in such a way to defraud or harm the plaintiff, and (3) that a refusal to disregard the corporate entity would subject the plaintiff to an unjust loss." *Bear, Inc.*, 303 S.W.3d at 148. However, regardless of the theory espoused by the Plaintiff, it must still satisfy the required dispositive elements. *Inter-tel*, 360 S.W.3d at 165.

Concerning the first element, Jadco asserts that C&F and J&H "were James Fannon." [Record No. 54, p. 24] Although, James and Benjamin Fannon were the sole members of C&F and J&H, Benjamin Fannon's involvement with C&F was described by him as "little to none." [Record No. 54-22, pp. 59; Record No. 53-2, p. 3] He stated in his August 12, 2013, deposition that he did not contribute anything for his 50% ownership in C&F and that he spent no more than thirty minutes a week on J&H matters. [*Id*., pp. 31, 64-65] Because of this, Jadco alleges that James Fannon had complete control over the business of C&F and J&H. [Record No. 54, p. 24]

Regarding the second element, Jadco argues that James Fannon currently stands indicted for a felony for failing to a failure to make a required disposition of property and that the inferences drawn from the facts and circumstances demonstrate the required injustice. [*Id*., p. 25; Record No. 54-19] Concerning the final element of the instrumentality theory, Jadco contends that they suffered a loss because of the actions of James Fannon at the expense of Jadco. [*Id*.]

The Court finds that Jadco has presented sufficient evidence to resolve the first and second dispositive element of the *Inter-tel* requirements for James Fannon. However, concerning Benjamin Fannon, it has not shown any facts that could lead a reasonable jury to find that he personally "exercised dominion over the entity to the point where there is no actual separateness." *Inter-tel*, 360 S.W.3d at 165. In fact, Jadco claims that Benjamin Fannon had almost no involvement with the management and control of C&F and J&H. [Record No. 54, p. 24] Here, the undisputed evidence shows that Benjamin Fannon did not

exercise the necessary dominion over C&F or J&H. Therefore, Jadco may not seek to hold Benjamin Fannon individually liable under this theory.

However, the corporate veil may still be pierced concerning James Fannon. "[O]wnership and control of a corporate entity by the persons sought to be held liable is . . . not sufficient by itself for denial of entity treatment," Jadco has demonstrated facts that go beyond mere ownership and control of C&F and J&H by James Fannon. *See Poyner v. Lear Siegler, Inc.*, 542 F.2d 955, 958 (6th Cir. 1976) (citing *C.L. & L. Motor Express Co. v. Achenbach*, 82 S.W.2d 335 (1935)). While James Fannon's complete control over C&F and J&H is, by itself, not sufficient to satisfy the domination element, it is an issue to be considered in conjunction with other factors that Jadco has raised. Jadco has pointed out a failure to keep with corporate formalities, a lack of a board of directors, the nonfunctioning of other officers and directors (in this case Benjamin Fannon), a lack of balance sheet, a possible diversion of assets to the detriment of creditors, and the possibility that the corporation was a merely a facade for the dominant owners. All of these issues are properly considered under the *Inter-tel* test for proving the first dispositive element regarding a loss of corporate separateness. Based on the issues raised by Jadco, a reasonable jury could find that the domination of the corporation as required under the first prong of *Inter-tel*. Therefore, a genuine issue of material fact exists regarding this claim.

The second element of the *Inter-tel* test is also satisfied. Defendants claim that the injustice requirement was not met here because "a mere breach of contract does not constitute an 'injustice.'" [Record No. 53-1, p. 16 (citing *Southeast Texas Inns, Inc. v. Prime*

*Hospitality Corp.*, 462 F.3d 666, 675 (6th Cir. 2006))]. But Jadco has passed this threshold. While the injustice required for veil piercing under this prong requires more than a simple inability for creditors to collect from their debtors, Jadco has demonstrated a material issue of fact that should be decided by a jury regarding the possible fraud committed as discussed above. "[W]hen the corporation is used to justify a wrong, protect fraud or defend crime, the law regards the corporation as an association of individuals." *Bear*, 303 S.W.3d at 147 (Ky. App. 2010) (citing *Dare To Be Great, Inc.*, 511 S.W.2d at 227 (Ky. 1974). Thus, the Court Jadco has satisfied both elements of *Inter-tel*.

### D.    Claim for Fraudulent Conveyances

The Defendants next argue that Jadco's fraudulent conveyance claims must be dismissed because those transfers were in payment of a valid, pre-existing debt. [Record No. 53-1, pp. 10-12] They contend that there is no dispute that C&F was justly indebted to J&H, J&H was justly indebted to FBT, and that C&F had a quarterly practice of making distributions to James and Benjamin Fannon. [*Id*., pp. 11-12] Therefore, they argue, those transfers were not fraudulent as a matter of law.

Jadco counters that the transfers have the "badges of fraud" and, therefore, the Defendants must show they were made in good faith. [Record No. 54, p. 29] It contends that the Defendants have not made such a showing and, therefore, the Defendants' motion must be denied. [*Id*., pp. 28-30] Jadco argues that the transfers made by the Defendants violate KRS § 378.030, which states:

Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with the intent to delay, hinder or defraud creditors, purchasers or other persons, and every bond or other evidence of debt given, action commenced or judgment suffered, with like intent, shall be void as against such creditors, purchasers and other persons.

KRS § 378.010.

Section 378.010 requires proof of the transferor's intent to defraud, which can be presumed in these circumstances because "the necessary consequence of a deliberate act by a debtor is to delay, hinder, or defraud his creditors." *Alt v. Burt*, 242 S.W.2d 974, 980 (Ky. App. 1951). While the Defendants claim that the transfers were in payment of a valid, pre-existing debt and, therefore, not fraudulent, there can still be a genuine issue of material fact regarding the fraudulent nature of those transfers if the intent to defraud was present at the time they were made.

Generally, in an action to set aside a conveyance for fraud, the fraud must be proven by a clear and convincing standard. *Russell Cnty. Feed Mill, Inc. v. Kimbler*, 520 S.W.2d 309, 311 (Ky. App. 1975). However, widely recognized exceptions to that standard have been adopted where "badges of fraud" are shown. Badges of fraud exist when: (1) the transfer or conveyance is between persons who are related or occupy a confidential relationship; (2) where the transfer or conveyance contains false statements and recitals as to consideration; (3) where the transfer or conveyance is made by a debtor in anticipation of a suit against him or after a suit has begun or is pending against him; and (4) where the transfer or conveyance is made by a debtor who transfers all or any appreciable part of his

property when he is insolvent or financially embarrassed.  *Id*. at 311.  A plaintiff's showing of a badge of fraud allows a court to presume intent to defraud.  *Id*. at 312.  This presumption shifts the burden of proof to the Defendant, who must establish, by clear and convincing evidence, a legitimate reason for the transfer.  *Id*.

There are several badges of fraud in this case.  The transfers in dispute are between related individuals.  The transfers from C&F to J&H essentially involved James and Benjamin Fannon transferring the money to themselves – they were the sole owners and members of C&F and J&H.  The distributions to James and Benjamin Fannon were also made to themselves.  The transfers to FBT also reflects a badge of fraud because of the familial relationship between David Fannon, FBT's sole owner, and James and Benjamin Fannon's father.  Jadco claims that C&F does not contest that it was solvent at the time the payment was made.  [Record No. 54, p. 28]  As stated above, C&F was experiencing financial difficulties from April 2009 to May 2009 when there was near fifty percent drop in their deposits from $520,247.94 to $233,625.00.  *See Hayes v. Rogers*, 447 S.E.2d 597, 600 (Ky. 1969) (A transfer made when the party is insolvent or "financially embarrassed" is a badge of fraud); [Record No. 54-9]  The transfers from C&F to J&H and the distributions to Benjamin and James Fannon were made on June 30, 2009, and Jadco's complaint was filed on July 31, 2009, in Clay Circuit Court.  [Record No. 53-2, pp. 2-3; Record No. 53-3, pp. 3-4]  Several of the transfers to FBT were made after the filing of the lawsuit.  A conveyance in anticipation of a lawsuit or while one is pending is prima facie fraudulent.  *James v. Stokes*, 203 Ky. 127, 261 S.W. 868, 876 (Ky.Ct.App.1924).  A transfer by a debtor

in anticipation of a suit against him or while it is pending against him is a badge of fraud. *Allen v. Ligon*, 175 Ky. 767, 771, 194 S.W. 1050 (1917); *see also Hager v. Coleman*, 307 Ky. 74, 208 S.W.2d 518 (Ky.Ct.App.1948); *Trent v. Carroll*, 380 S.W.2d 87 (Ky. Ct. App. 1964).

Having demonstrated badges of fraud, the burden of proving good faith falls to the party claiming that the transfers were proper. If nothing is produced to explain the good faith of the transfer, the lack of production itself also becomes a badge of fraud. *Jones v. Jones*, 71 S.W.2d 999, 1004 (Ky. 1934). To meet this burden, the purchaser must show three things: "(1) [h]is good faith must appear; (2) a consideration must pass at the time of the purchase; and (3) it must be a fair equivalent of the thing bought." *Bolling v. Adams*, 296 S.W.2d 696, 699 (Ky. 1956).

The Defendants claim that these transfers were made in payment of valid, pre-existing debt. [Record No. 53-1, pp. 10-12] They argue that because there is no genuine issue of material fact regarding the validity of these pre-existing debts they are entitled to summary judgment concerning the claims for fraudulent conveyances. Because there are badges of fraud in this case, the Defendants must produce clear and convincing evidence that these transfers were not made with an intent to defraud. *Russell Cnty.*, 520 S.W.2d at 312. The Defendants contend that the affidavits of James, Benjamin, and David Fannon show that there was a valid, pre-existing debt at the time the transfers were made. [Record No. 55, p. 3] However, without more, than self-serving affidavits and payable/receivables demonstrating good faith, there is a still a genuine issue of material fact regarding the intent

of the debtor at the time the transfers were made.  *Syvongxay v. Henderson*, 147 F.Supp.2d 854, 859 (N.D.Ohio 2001); *Wolfe v. Village of Brice*, 37 F.Supp.2d 1021, 1026 (S.D.Ohio 1999).  The Defendants have not made the required production to satisfy this burden.  Thus, it would be improper to grant summary judgment regarding this claim.

## IV.

For the reasons stated above, it is hereby

**ORDERED** as follows

1.      The Defendants' Motion for Summary Judgment [Record No. 53-1] is **GRANTED**, in part and **DENIED**, in part.

2.      Plaintiff Jadco's preferential transfer claim against J&H and Benjamin Fannon [Record No. 34, p.8] is **DISMISSED**, as time-barred.

3.      Plaintiff Jadco Enterprises Inc.'s claim to pierce to corporate veil for Benjamin Fannon is **DISMISSED**.

4.      The remainder of the Defendants' Motion for Summary Judgment is **DENIED**. This 15th day of November, 2013.



Signed By:
*Danny C. Reeves*
United States District Judge