UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| JADCO ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 12-225-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JAMES D. FANNON, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants James Fannon, Benjamin Fannon, C&F Contractors, LLC ("C&F"), J and H Enterprises of Virginia, LLC ("J&H"), and Fannon Brothers Tire, Inc. ("FBT") have filed a Motion for Reconsideration of the Court's November 15, 2013, Memorandum Opinion and Order. [Record No. 67] Alternatively, they request a separate trial for FBT. For the reasons discussed below, the motion will be granted, in part, and denied, in part.

**I.**

Plaintiff Jadco Enterprises, Inc., ("Jadco") is a Kentucky corporation involved in the mining and selling of coal. [Record No. 34, p. 2] Defendant C&F is in the business of hauling coal and Defendant J&H is a coal transportation subcontractor with James and Benjamin Fannon as its sole members and managers. [Record No. 53-2, p. 2] C&F transports coal through various subcontractors such as J&H. [Record No. 53-2, p. 2] Defendant FBT is a Virginia corporation that sells tires to various companies including J&H. [*Id.*, p. 3] FBT is wholly-owned by David Fannon, the father of James and Benjamin Fannon. [*Id.*]

This case involves a purchase order for coal involving Jadco and some of the defendants. Jadco alleges that James Fannon committed fraud by issuing the purchase order with no intent to pay. It further contends that James Fannon made preferential transfers and that the defendants made fraudulent conveyances involving the proceeds of the transaction. Jadco also claims that the corporate veil of C&F and J&H should be pierced and that James Fannon may be held personally liable for the alleged fraudulent conduct.

According to Jadco, this dispute commenced when C&F breached a contract with Century Coal, LLC ("Century Coal"), a limited liability corporation involved in mining and selling coal. In early 2009, Century Coal was experiencing financial problem, causing James Fannon and C&F to make multiple attempts to obtain payment for hauling services previously provided by C&F to Century Coal. [Record Nos. 54-2, p. 87 and 54-3, pp. 55-80] ] Around this time, C&F was also experiencing financial problems, as reflected by a 50% reduction in deposits (from April 2009 to May 2009). [Record No. 54-9] C&F was also indebted to J&H for trucking services, while J&H owed FBT for tires it had purchased. [Record No. 54-10]

On June 10, 2009, James Fannon attempted to issue another purchase order to Century Coal. [Record No. 54-12] However, the transaction was declined by Larry Heatherman, an employee of Century. Heatherman advised Fannon that Jadco was mining on the same property so he could issue the purchase order to Jadco. [Record No. 54-13, pp. 1-2] The purchase order in question was issued to Jadco on June 11, 2009, for 2,500 tons of coal for a purchase price of $60.00 per ton. [Record Nos. 54-15 and 34, p. 3]

Jadco delivered the coal to C&F after the purchase order was issued. But after paying the first invoice for $7,989.00, C&F did not pay the remainder of the amount due. [Record No. 53-2, p. 2] Instead, C&F sold the coal for $138,536.13. [*Id.*] C&F then issued several checks to J&H for $160,800 and two checks to James and Benjamin Fannon each for $3,875. The defendants claim that these checks reflected payment of valid, preexisting debt to J&H and James and Benjamin Fannon. [Record No. 53-2, p. 4] And they further contend that the payments made to Benjamin and James Fannon were compensation, made in the ordinary course of business. [*Id.*]

From June 15, 2009, to February 22, 2010, J&H also issued several checks to FBT. [Record No. 34, pp. 5-6] The defendants claim that these checks were payments of valid, pre-existing debts for tires and other services provided by FBT. J&H also issued several checks to FBT. The defendants claim that this was in payment of a valid pre-existing debt.

On August 30, 2013, the defendants moved for summary judgment. [Record No. 53] This Court denied the motion, in part, and granted it, in part. [Record No. 66] The Court dismissed Jadco's preferential transfer claim against J&H and Benjamin Fannon as being time-barred. The Court also dismissed Jadco's attempt to pierce the corporate veil regarding Benjamin Fannon, but allowed piercing for James Fannon. The Court denied the remainder of the defendants' motion for summary judgment. Those rulings are the subject of the defendants' current motion.

## II.

Motions to reconsider under Rule 60(b) give an "opportunity for the court to correct manifest errors of law or fact and to review newly discovered evidence or to review a prior decision when there has been a change in the law." *United States v. Davis*, 939 F. Supp. 810, 812 (D. Kan. 1996). Rule 60(b) motions fall within the sound discretion of the district court. *FHC Equities, L.L.C. v. MBL Life Assurance Corp.*, 188 F.3d 678, 683 (6th Cir. 1999). Such motions seek extraordinary judicial relief and can be granted only upon a showing of exceptional circumstances. *McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 502–03 (6th Cir. 2000) (citing *Dickerson v. Bd. of Educ. of Ford Heights*, 32 F.3d 1114, 1116 (7th Cir. 1994)).

The defendants raise four issues in their motion for reconsideration. They contend that: (i) the Court erred by applying the badges of fraud analysis to the fraudulent conveyance issue because of the existence of a pre-existing debt; (ii) the standard for rebutting badges of fraud should not be heightened; and (iii) there was no genuine issue of material fact regarding the pre-existing debt. In addition, the defendants argue that a separate trial should be ordered for FBT. For the reasons explained below, the Court agrees with the defendants regarding the second issue raised in their motion.

## III.

### A.     Effect of Pre-Existing Debt

The defendants claim that when there is proof of a valid, underlying pre-existing debt there can never be a fraudulent conveyance, even if badges of fraud are present and even if there is actual intent to defraud a creditor.    Precedent in Kentucky is mixed on this issue.

The Kentucky Revised Statutes defines a fraudulent conveyance broadly, as "[e]very gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with the intent to delay, hinder or defraud creditors, purchasers or other persons[.]" KRS § 378.010. The defendants urge the adoption of the rule that repayment of debt to a pre-existing creditor can never constitute a fraudulent conveyance and can only constitute a preferential transfer. Yet, if there is a payment of a pre-existing debt, but it is done with the intent to "delay, hinder or defraud creditors, purchasers or other persons" it meets the explicit standard in the statute. *Id.*

A transfer between two related parties is typically a badge of fraud. *Bolling v. Adams*, 296 S.W.2d 696, 699 (Ky. Ct. App. 1956) (citing *Howard v. First Nat'l Bank of Harlan, Ky.*, 110 S.W.2d 293 (Ky. Ct. App. 1937); *Campbell v. Dixon*, 214 S.W.2d 996, 997 (Ky. Ct. App. 1948); *Daniels v. Harp*, 190 S.W.2d 664 (Ky. Ct. App. 1945); *Hager v. Coleman* 208 S.W.2d 518, 519 (Ky. Ct. App. 1948)). However, the defendants argue that the "payment of pre-existing debt is, in effect, a safe harbor from a fraudulent conveyance action." [Record No. 67-1, p. 8] They cite *Seiler v. Walz*, 29 S.W. 338 (Ky. Ct. App. 1895), in support of their position.

In *Seiler*, George A. Seiler purchased land from his father, George F. Seiler, for $268, even though the value of the land was $1,300. The remainder of the amount paid offset a debt owed to George A. Seiler by his father. *Id.* Walz sued the Seilers, alleging that the conveyance was fraudulent. However, the court held that, "to the extent the father was indebted to the son there could have been no fraudulent intent in the meaning of the section under which this suit was brought." *Id.* at 339.

In *Farmer's Bank of Fountain Run v. Hagan,* the Kentucky Court of Appeals held that, "[a]s a general rule, pre-existing indebtedness is a sufficient consideration to uphold a conveyance given in payment of or as security of such indebtedness; and such a conveyance in payment of *bona fide* antecedent indebtedness should not be set aside unless the fair and reasonable value of the property is greatly in excess of the amount of the indebtedness." 46 S.W.2d 1084, 1087 (Ky. Ct. App. 1932). However, the *Hagan* court also found that "*[i]n the absence of fraud*, a conveyance to a wife by the husband, in satisfaction of or as security for such indebtedness, will be upheld when attacked as fraudulent, even though it may be preferential." *Hagan*, 46 S.W. at 1087 (emphasis added). Notably, the Court inquired into the attendant badges of fraud. *Id* (asserting that a husband to wife conveyance is a badge of fraud which the defendant rebutted upon the shifting of the burden.).

Next, in *First National Bank v. Williamson*, the court held that "it appears that the 'badges of fraud' which the appellant maintains were disclosed were fairly and clearly explained away and the transaction shown to have been for a valuable consideration and *in good faith* as measured by the terms of [the fraudulent conveyance statutes]." 115 S.W.2d 565, 567 (Ky. Ct. App. 1938). The court analyzed the badges of fraud, the valuable consideration for the pre-existing debt, and the good faith of the transaction and found that the defendants had rebutted the badges of fraud.

Contrary to the defendants' argument, the court's holdings in *Hagan* and *First National* suggest that if there is an absence of good faith or proof of fraud — even if made in payment of pre-existing debt — a conveyance can still be found to be fraudulent. Thus, while the existence

of a pre-existing debt is evidence which may be used to rebut an accusation of fraud, the analysis does not stop once such evidence is offered. The fact finder must still determine whether there is bad faith or an intent to defraud.

The defendants have not offered any current authority in support of their position. In fact, the most recent case was decided in 1939. *Liberty Bank & Trust v. Davis*. 134 S.W.2d 988 (Ky. Ct. App. 1939) There, the court held that pre-existing debt is *typically* sufficient consideration to uphold a conveyance. *Id*. at 990. Recently, however, other courts have recognized that fraudulent conveyance claims do not fail as a matter of law because they represent payments to a pre-existing creditor. *See In re Pearlman*, 460 B.R. 306, 312-13 (Bankr. M.D. Fla. 2011) ("A debtor who pays an existing debt, perhaps a loan due to one's mother, with the actual intent to hinder, delay, or defraud his other creditors, has made a fraudulent transfer that is subject to avoidance."); *see also In re Sharp Int'l Corp*., 403 F.3d 43, 56 (2d Cir. 2005); *Boston Trading Grp., Inc. v. Burnazos*, 835 F.2d 1504, 1512 (1st Cir. 1987).

While, those courts were interpreting the Uniform Fraudulent Conveyance Acts adopted in other jurisdictions, Kentucky cases also hold that the transferor's intent is an issue to consider when evaluating fraudulent conveyance claims. For example, in *Springfield State Bank v. Kelley*, the Kentucky Court of Appeals held that payment of a wife's debt by her husband does not make a fraudulent conveyance any less fraudulent. 102 S.W.2d 360, 362-63 (Ky. Ct. App. 1936). And in *Lewis v. Barber*, the court similarly held that pre-existing debt is not an automatic safe harbor from fraudulent intent. 49 S.W.2d 328 (Ky. Ct. App. 1932).[1] Thus, a finding of

---

[1] In *Turner v. Hammock*, the Kentucky Court of Appeals found that valid consideration for the conveyance was not enough to disprove the fraud. It must also be made with *bona fide* intent.

fraudulent intent is a central issue when examining a fraudulent conveyance claim. While a pre-existing debt may be relevant in rebutting a claim of fraudulent intent, the validity of that debt must still be proven. Therefore, the badges of fraud analysis is relevant to the plaintiff's claims. Several cases cited by the parties indicate that the defendants must show that the conveyance was made in good faith, as well as demonstrating adequate consideration for the conveyance. The modern trend from other courts and the express language of the statute supports this conclusion. *See In re Pearlman*, 460 B.R. at 312-13; *see also In re Sharp Int'l Corp.*, 403 at 56; *Boston Trading Grp*, 835 F.2d at 1512.

As noted above, there is some inconsistency in Kentucky opinions discussing fraudulent conveyances. *Compare Seiler*, 29 S.W. at 339 *with Springfield State Bank,* 102 S.W.2d at 362-63. However, this Court concludes that it is more prudent to follow the modern trend of other courts, the holding of several Kentucky cases, and the language of the statute and analyze the intent behind the transfer, as well as the validity of the pre-existing debt. The correct analysis first looks at the badges of fraud, followed by the validity of pre-existing debt. The fact finder should then determine if there was any fraudulent intent behind the transfer(s). The analysis does not end once evidence of pre-existing debt is offered.

B. **The Applicable Standard When/If the Burden Shifts**

The defendants also argue that if the burden shifts to them once the plaintiff offers evidence of badges of fraud, that standard should not be clear and convincing. There is no Kentucky case expressly holding that the badges of fraud must be rebutted by clear and

---

18 S.W.2d 285, 286 (Ky. Ct. App. 1929).

convincing evidence. Additionally, holdings from courts outside of Kentucky are not uniform regarding the burden shifting element of the badges of fraud.

The general rule stated in *Russell County Feed Mill, Inc. v. Kimbler* is that "[i]n an action to set aside a conveyance for fraud [under KRS § 378.010] . . . fraud must be established by clear and convincing evidence." 520 S.W.2d 309, 311 (Ky. 1975). Some courts have held that the defendant is required to rebut the presumption raised by the badges of fraud with the same standard of proof required for the plaintiff to establish the fraud. *Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1065 (3d Cir. 1992); *see also In re S. Textile Knitters*, 65 F. App'x 426, 435 (4th Cir. 2003). However, *Russell County* merely states that the burden transfers to the defendant if the badges are shown, not that the burden has the same heightened standard of the original claim of fraud. *See also Hayes v. Rodgers*, 447 S.W.2d 597, 600 (Ky. 1969) (describing the burden as "proving good faith"). And this Court has not found any Kentucky case that has explicitly required the validity of the conveyance be proved by a heightened standard. As a result, if the burden shifts, the defendants will be required to show the good faith of the transaction by a preponderance of the evidence.

However, to be entitled to summary judgment, the defendants must establish that there is no genuine issue of material fact to be resolved. *Commercial Group Inc.,v. R.C. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). And the court must draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In the present case, to obtain summary judgment, the defendants must demonstrate good faith and adequate consideration with all inferences favoring

Jadco. If there is a genuine issue of material fact regarding either issue, summary judgment will not be appropriate.

### C. Genuine Issues of Material Fact Exists Regarding the Pre-Existing Debt.

The defendants claim that there is no genuine issue of material fact regarding the existence, validity, or amount of the pre-existing debt. They argue that the proof establishes that these debts actually existed and that there is no genuine issue of material fact concerning them. The defendants produce invoices and payments between FBT and J&H. [Record No. 70-1] J&H also provides banking records showing their invoices from May 21, 2009, to April 7, 2010. [Record No. 54-10] And the defendants submit affidavits demonstrating their indebtedness. [Record No. 53-1] While these documents demonstrate the existence of debt, they do not establish the adequacy of consideration or the bona fide intent of those conveyances.

The defendants claim that Jadco has failed to present any evidence that would question the existence or *bona fide* nature of the sale transactions that created the indebtedness in question. However, Jadco has alleged – and this Court has identified – several badges of fraud in this case. [Record No. 66, pp. 24-25] C&F was having financial problems in April and May 2009. During that period, the company experienced a significant decrease in deposits (from $520,247.94 to $233,625.00). [Record No. 54-9] *See Hayes v. Rogers*, 447 S.E.2d 597, 600 (Ky. Ct. App. 1969) (A transfer made when the party is insolvent or "financially embarrassed" is a badge of fraud).

The transfers from C&F to J&H and the distributions to Benjamin and James Fannon were made on June 30, 2009. Jadco's Complaint was filed on July 31, 2009, in Clay Circuit

Court. [Record No. 53-2, pp. 2-3; Record No. 53-3, pp. 3-4] Many conveyances to FBT were made after the filing of the lawsuit. The defendants argue that the transfers between J&H and FBT were too remote from the lawsuit to be considered (*i.e.*, J&H was not added until October 2012, years after the coal purchase in question). However, J&H is owned by the same defendants that own C&F. It is not unreasonable to expect that James and Benjamin expected to have J&H and FBT added as parties after the filing of the original claim. A conveyance in anticipation of a lawsuit or while one is pending is prima facie fraudulent. *James v. Stokes*, 261 S.W. 868, 876 (Ky. Ct. App. 1924). Further, a transfer by a debtor in anticipation of a suit against him or while it is pending against him is a badge of fraud. *Allen v. Ligon*, 194 S.W. 1050 (Ky. Ct. App. 1917); *see also Hager v. Coleman*, 208 S.W.2d 518 (Ky. Ct App. 1948); *Trent v. Carroll*, 380 S.W.2d 87 (Ky. Ct. App. 1964).

These multiple badges of fraud are not contested in the defendants' present motion. The defendants merely argue that there is proof that these debts existed and they are debts typical of someone doing business of the type in which they were engaged. To rebut the badges of fraud, the defendants must show that the conveyances were made in good faith and were for adequate consideration. *Bolling*, 296 S.W.2d at 699. In this regard, they contend that the invoices and payments between J&H and FBT demonstrate a pre-existing debt. The defendants also provided FBT's monthly account statements to J&H to show that there was a valid pre-existing debt in the ordinary course of business. However, the weight of those monthly account statements is questionable as its authenticity is in dispute. [Record No. 64] David Fannon's deposition could indicate that there was no usual course of dealing between J&H and FBT, which undermines the

ordinary course of business between the parties. [Record No. 64-1, p. 65] While the defendants argue that the existence of a pre-existing debt protects them from the claim of fraud, they are incorrect, for the reasons outlined above. Once the burden has shifted to them they must rebut that burden by showing the good faith and adequate consideration of the transactions in question, which they have failed to do.

Jadco claims that the defendants' proof has not been satisfactory to show that the conveyances were not fraudulent. While the defendants have produced business records and affidavits, there are still some questions regarding the validity of these conveyances. A payable/receivable sheet would still exist even if a conveyance was made with the intent to defraud, delay, or hinder a creditor. The monthly statements between J&H and FBT have their authenticity challenged. [Record No. 64] Without more, self-serving affidavits are insufficient to sustain a motion for summary judgment. *Devine v. Jefferson Cnty., Kentucky*, 186 F.Supp.2d 742, 744 (W.D. Ky. 2001); *see also Syvongxay v. Henderson*, 147 F.Supp.2d 854, 859 (N.D. Ohio 2001); *Wolfe v. Village of Brice*, 37 F. Supp. 2d 1021, 1026 (S.D.Ohio 1999).

Here, the plaintiff argues that the defendants made conveyances with the intent to defraud. The defendants contend that the evidence is uncontroverted regarding the existence of the indebtedness and the amount. However, as discussed above, several badges of fraud are presented. There is a lack of balance sheets and promissory notes that would help demonstrate the legitimacy of these transfers. Jadco argues that they repeatedly sought copies of the defendants' financial statements and balance sheets, but they have not been provided. This evidence would certainly go to prove good intent, adequate consideration, and validity of these

transactions. However, the defendants have not produced this evidence for Jadco or the Court. The defendants claim that they did not want to supply this evidence because it would "burden the record of this case." [Record No. 67-1, p. 13] But the result is that the defendants' motion for summary judgment is not properly supported. There remain genuine issues of material fact regarding the good faith of these conveyances.

A court may deny a motion for summary judgment "where, although the movant may have technically shouldered his burden, the court is not reasonably certain that there is no triable issues of fact[.]" *ACME Roll Forming Co., v. Home Ins. Co.*, 31 Fed. Appx. 866, 869 (6th Cir. 2002). The defendants claim that there is no genuine issue of material fact regarding these badges because of payable/receivables, handwritten invoices, and self-serving affidavits. While these do show the existence of the debt, they do not remove the genuine question of fact concerning the alleged fraudulent intent of these transfers. The mere existence of debt is not enough to rebut a presumption of fraud, much less sustain a motion for summary judgment, as discussed above. The question of fraudulent intent for these conveyances is more appropriately handled by a jury than in a motion for summary judgment. Where a genuine issue of fact exists, summary judgment is improper. Therefore, summary judgment regarding the fraudulent conveyance claims is not appropriate.

### D. Separating FBT

The defendants also argue for an order granting FBT a separate trial on the fraudulent conveyance claim. They contend that a separate trial would prevent prejudice to FBT, eliminate confusion of the issues, and conserve judicial resources. Jadco argues that creating two separate

trials would prejudice Jadco and burden the Court by maintaining two separate actions. The Court agrees with Jadco's argument regarding this issue.

The Federal Rules of Civil Procedure state that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third party claims." Fed. R. of Civ. P. 42(b). Rule 42(b) places the decision to determine what issues or claims should be tried separately within the discretion of the district court. *Saxion v. Titan-C-Manufacturing, Inc.*, 86 F.3d 553, 556 (6th Cir. 1996). The main purpose of Rule 42(b) "is to enable the trial judge to dispose of a case in a way that advances judicial efficiency and is fair to the parties." *In re Bendectin Litigation*, 857 F.2d 290, 307 (6th Cir. 1988). However, "[i]t is the interest of efficient judicial administration that is to be controlling, rather than the wishes of the parties." *Id*. "In deciding whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay, the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." *Id*.

To establish liability for FBT, Jadco must first establish that the payments made from C&F to J&H were fraudulent. The defendants claim that forcing FBT to expend resources on a defense which may be unnecessary if J&H successfully defend the fraudulent conveyance claims would be prejudicial. The defendants also argue that FBT would be prejudiced in its defense by the accusations of fraud for the original coal transaction, to which FBT was not a party. They also contend that separating FBT would also eliminate confusion of the issues at trial. They state that Jadco has brought complex fraud claims and resolving those issues at trial

would be tedious with complicated proof. Separating FBT, the defendants claim, would remove all of these issues of prejudice and expense.

Jadco contends that separating the claims would place a heavy burden on the Court and the parties. Separation would cause the case to be tried twice, it would keep this case on the docket, and the Court would have to go through another round of pretrial scheduling and a second trial. Jadco maintains that James and Benjamin Fannon are officers of FBT and both C&F and J&H are in the same building as FBT. Jadco argues that the FBT is a beneficiary of the scheme set up to defraud Jadco. Therefore, they argue, that this matter should not be separated.

FBT was closely-related to the activity of the other Defendants. The proof required to show that they were liable for fraudulent conveyances should not be any more complicated than the other claims. Kentucky case law demonstrates that the recipient of a fraudulent conveyance is often a co-defendant in the action. *See Seiler v. Walz*, 29 S.W. 338 (Ky. Ct. App. 1895); *see also Farmer's Bank of Fountain Run v. Hagan,* 46 S.W.2d 1084 (Ky. Ct. App. 1932). The issue of predicate liability to find the transferee liable was present in those cases and those courts were able to handle the cases without prejudice or waste without separation. A jury, in a single trial, could find that the initial transfers were fraudulent and then find that the transfers to FBT were fraudulent. The issues here are interwoven and Jadco would likely have to produce the same evidence at both trials. It is not necessary or a prudent use of judicial resources to have a completely separate trial for an issue that can be resolved in one trial. "[B]ifurcating the . . . claims will not necessarily enhance or serve judicial economy and, in fact, may lead to an

uneconomical result." *Marcum v. Scioto Cnty., Ohio*, No. 10-790-KLL, 2012 WL 2674303, at *2 (S.D. Ohio July 5, 2012). Denying separation will produce a just and expeditious resolution of this litigation. Therefore, the motion for a separate trial will be denied.

## IV.

In summary, the motion for reconsideration will be denied, in part, and granted, in part. The defendants are incorrect in their assertion about the effect of a pre-existing debt. And while the Court was initially incorrect regarding the burden of proof to be applied in rebutting a presumption of fraud, that error does not change the outcome of the earlier opinion. There is still a question of fraudulent intent of the defendants in making these conveyances. Further, separate trials is unnecessary and a waste of judicial resources. Therefore, the defendants' motion will be granted to the extent that the burden of proof for rebutting the presumption of fraud was incorrect. However, the defendants' request for a dismissal of any additional claims – or for separate trials – will be denied. Accordingly, it is hereby

**ORDERED** that the Defendants' motion for reconsideration [Record No. 67] is **GRANTED**, in part, and **DENIED**, in part. The Court's November 15, 2013, Memorandum Opinion and Order is reconsidered to the extent that the burden of proof to rebut the badges of fraud may be met by demonstrating good faith by a preponderance of the evidence. The remainder of the motion for reconsideration is **DENIED**.

This 7th day of January, 2014.



Signed By:
*Danny C. Reeves* DCR
United States District Judge